**GREG COLEMAN LAW PC**
Alex R. Straus (Cal. Bar No. 321366)
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

Rachel L. Soffin*
Jonathan B. Cohen*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY BALDYGA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEVA CONCEPTS, LLC, d/b/a DevaCurl,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **BREACH OF EXPRESS WARRANTY**<br>2. **BREACH OF IMPLIED WARRANTY**<br>3. **MAGNUSON-MOSS WARRANTY ACT**<br>4. **UNJUST ENRICHMENT**<br>5. **NEGLIGENT FAILURE TO TEST**<br>6. **NEGLIGENT FAILURE TO WARN**<br>7. **VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT, Cal. Bus. & Prof. Code § 1750, *et seq.***<br>8. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et seq.***<br>9. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code § 17500, *et seq.*** |

## CLASS ACTION COMPLAINT

Plaintiff Wendy Baldyga ("Plaintiff" or "Ms. Baldyga") brings this class action against Defendant Deva Concepts, LLC, d/b/a DevaCurl ("Defendant" or "Devacurl"), on behalf of herself and all others similarly situated, and complains and alleges upon her personal knowledge, upon information and belief, and upon the investigation of her attorneys, as follows:

## BACKGROUND

1.    Plaintiff brings this class action on behalf of herself and all consumers who purchased Defendant's personal hair products, including:

- DevaCurl No-Poo Original non-lathering conditioning cleanser;
- DevaCurl One Condition Original Daily Cream hair-conditioner;
- DevaCurl Light Defining Gel;
- DevaCurl Low-Poo Original cleanser;
- DevaCurl Low-Poo Delight cleanser;
- DevaCurl No-Poo Decadence cleanser;
- DevaCurl One Condition Delight Weightless Waves hair-conditioner;
- DevaCurl One Condition Decadence Ultra Moisturizing Milk hair-conditioner;
- DevaCurl Leave-In Decadence Ultra Moisturizing conditioner;
- Styling Cream Touchable Curl Definer;
- Wavemaker Touchable Texture Whip;
- DevaCurl Ultra Defining Gel Strong Hold No-Crunch Styler;
- Super Stretch Coconut Curl Elongator; and
- Melt into Moisture Matcha Butter Conditioning Mask (collectively, the "Products").

2.    Plaintiff seeks damages and equitable remedies for herself, the Nationwide Class, and the California Subclass.

3. Defendant develops, formulates, manufactures, markets, advertises, distributes and sells the fourteen Products listed above to consumers nationwide, including in the state of California.

4. Since 2002, Defendant has touted itself as a pioneer in a "new haircare category" focused on the needs of women with curly hair.[1] Beginning in 2002, Defendant launched its No-Poo Original, "our game-changing alternative to traditional shampoo. This first-of-its-kind, no-suds conditioning cleanser is free of sulfates, parabens, and silicones to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous. No-Poo changed the industry and the lives of countless curlfriends." *Id*.

5. According to Defendant's website, DevaCurl was "free of harsh ingredients long before it was buzzworthy, and we did it because it was the right thing to do for curls. All of our products are inspired by our curl community and perfected in our salons, always made with nourishing, hydrating ingredients and designed to meet the unique needs of every curl type." *Id*.

6. Defendant also claims that its No-Poo Products "allow[] your scalp to regulate, and your hair to become more of what nature intended." *Id*.

7. Defendant claims that its philosophy is to "listen to your story, your needs, your lifestyle, and develop products that will not only enhance your curls, but also enhance your life."[2] "What's important to you is important to us—which is why we were 100% sulfate, silicone, paraben, phthalate, mineral oil, gluten and cruelty free from our beginning 25 years ago." *Id*.

8. Regarding the formulation of its Products, Defendant represents that:

---

[1] https://www.devacurl.com/us/curl-101/our-story (last visited April 2, 2020).

[2] https://www.devacurl.com/us/curl-101/product-philosophy (last visited April 2, 2020).

> All of our products are formulated with a moisture foundation that helps curls look and feel healthy, conditioned, soft, defined, shiny, and frizz-free. We travel the world and partner with talented chemists researching natural and functional ingredients, technologies, product textures, and innovative ways to give your curls what they need to look and feel their very best every day.
>
> We literally take the products out of the lab and into curls! Our headquarters is one block from our Devachan salon in Soho so there is constant interaction with stylists and clients to test and validate every product for quality, safety and performance.

*Id.*

9.     On its website, Defendant answers the question, "How are new products developed and tested?" by stating: "We are committed to continuously listening, learning and finding innovative ways to help all curlkind love their curls! We listen to our stylists and curl community to find out what they need and also use the latest technology and ingredients to formulate the newest essentials to bring out the best in curls. *Id.*

10.     Regarding the testing, safety, and compliance of its Products, Defendant claims on its website that:

> We test our products on actual people, not mannequins or hair swatches. Devachan Salon is our thinktank and product playground where we put our formulas to the test with our stylists and curlfriends. Each new product is perfected and only introduced to the market after receiving your stamp of approval and undergoing our strict safety testing protocols.
>
> We are committed to the safety of our products and our curl community. Every product undergoes rigorous testing in partnership with our manufacturers and 3rd party testing facilities to ensure everything we produce is safe. Our products contain IFRA compliant fragrances at safe levels (<1%) which align to global safety standards. All of our

products meet the safety requirements of the US Cosmetic Ingredient Review (CIR) and Health Canada, and all of our formulas available in the EU comply with the requirements of the EU Scientific Committee on Cosmetics Safety (SCCS).

*Id.*

11.    Defendant has successfully marketed itself and its Products to curly-haired consumers seeking an alternative to traditional shampoos and hair products. This is evident from Defendant's annual revenue, which is estimated to be approximately $100,000,000.00.[3]

12.    Consumers pay a premium above and beyond the cost of traditional retail and salon shampoos for Defendant's Product, based upon the representations above. The current prices on Defendant's website for the Products at issue are as follows:

- DevaCurl No-Poo Original non-lathering conditioning cleanser: $46
- DevaCurl One Condition Original Daily Cream hair-conditioner: $46
- DevaCurl Light Defining Gel: $46
- DevaCurl Low-Poo Original cleanser: $46
- DevaCurl Low-Poo Delight cleanser: $46
- DevaCurl No-Poo Decadence cleanser: $46
- DevaCurl One Condition Delight Weightless Waves hair-conditioner: $46
- DevaCurl One Condition Decadence hair-conditioner: $46
- DevaCurl Leave-In Decadence Ultra Moisturizing conditioner: $26
- Styling Cream Touchable Curl Definer: $28
- Wavemaker Touchable Texture Whip: $26
- DevaCurl Ultra Defining Gel Strong Hold No-Crunch Styler: $46
- Super Stretch Coconut Curl Elongator: $30
- Melt into Moisture Matcha Butter Conditioning Mask: $64

---

[3] https://www.owler.com/company/devacurl (last visited April 2, 2020).

13.     Consumers who have bought and used Defendant's Products have paid not only financially, but physically and emotionally, for their reliance on Defendant's representations and claims.

14.     Notwithstanding Defendant's representations and claims regarding its supposed use of high-quality ingredients in and testing of its Products, there is a defect in Defendant's Products, which has caused a significant number of consumers, including Plaintiff and Class Members, to suffer scalp irritation, hair shedding, hair thinning and breakage, and significant hair loss to the point of balding when using the Products in accordance with the directions provided by Defendant.

15.     The Products' ingredients, which also include their fragrances and extracts, can cause inflammation, which can result in hair loss and increased breakage. This inflammation can also cause the hair follicle to harden, affecting hair texture, and leading to breakage.

16.     Indeed, thousands of consumers have reported scalp irritation, significant hair loss, and/or damage shortly after or during actual use of the Products.

17.     Despite having actual or constructive knowledge of the fact that its Products have injured consumers, Defendant has consistently and uniformly failed to provide any warning to consumers regarding the aforementioned severe side effects that can result – and have resulted – from use of its Products. Instead, Defendant continues to assert online and elsewhere that its Products are purportedly gentle and beneficial to curly-haired consumers. For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[4] With regard to its One Condition® Original product, Defendant's website states "When it

---

[4] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930 (last visited April 2, 2020).

CLASS ACTION COMPLAINT

comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[5] These statements and others were and are false, deceptive, and misleading and have harmed Plaintiff and Class Members.

18.    Disturbingly, Defendant appears to have full knowledge of the detriment its Products pose to consumers and, rather than improve its Products to make them safe for use by consumers, Defendant has opted to conceal and fail to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[6]

19.    Rather than address the problem, Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable. *Id.*

20.    Defendant unambiguously has knowledge of the hair loss and scalp irritation caused by the Products. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation since February 2018. And there have been hundreds of complaints posted on social media sites in connection with hair loss caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[7] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its Products, going so far as to

---

[5] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898 (last visited April 2, 2020).

[6] https://www.devacurl.com/blog/hair-shedding-101/ (last visited April 2, 2020).

[7] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/

post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[8]

21.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

22.    Had Plaintiff and Class Members known that Defendant's Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

23.    Plaintiff and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

24.    Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 & 1367, as this is a class action in which the controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some Members of the putative Classes are citizens of states different from Defendant.

26.    This Court also has personal jurisdiction over Defendant, as it transacts business nationwide, including in this District, has substantial nationwide contacts, including in this District, engaged in conduct that had and continues to have a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons nationwide, and purposely availed itself of the laws of the United States.

---

[8] https://www.devacurl.com/us/deva-community-statement (last visited April 2, 2020).

CLASS ACTION COMPLAINT

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Plaintiff resides in this District, and Defendant transacts business in this District.

## PARTIES

28.     Plaintiff Wendy Baldyga is a resident of Morgan Hill, Santa Clara County, California who has purchased and used DevaCurl Products within the relevant time period. After using DevaCurl Products, she experienced scalp irritation and significant hair loss.

29.     Defendant Deva Concepts, LLC is a Delaware corporation with its principal place of business located at 560 Broadway, Suite 206, New York, NY 10012, which sells its Products nationwide, including in the state of California.

## FACTUAL ALLEGATIONS

30.     At all relevant times, Defendant has marketed its Products to curly-haired consumers nationwide as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[9]

31.     Notwithstanding Defendant's representations and claims, its Products cause users to sustain scalp irritation, shedding, thinning, breakage, hair loss, and/or balding during normal use and following Defendant's provided directions. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiff and Class Members is embarrassing, emotionally devastating, and can be extreme in certain instances.

32.     Consumers pay a premium for the Products far and above what normal hair care products typically cost. For example, Defendant's No-Poo Product sells for forty-six dollars ($46.00) as compared to similar retail products sold at Target for as little as

---

[9]  https://www.devacurl.com/us/curl-101/product-philosophy (last visited April 2, 2020).

1    three dollars and ninety-nine cents ($3.99)[10]—a difference of more than forty-two
2    dollars ($42.00).

3    33.    Consumers pay a premium for Defendant's Products because of the
4    purported benefits Defendant claims they provide above and beyond normal hair care
5    products. For example, Defendant claims that the No-Poo Product is "Sulfate Free,"
6    that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients,"
7    that it gives "your curls what they need and nothing they don't," and that it comes with
8    benefits such as the ability to keep hair from drying out and maintain composure.

9    34.    However, the Product labels fail to warn users that the Products cause scalp
10   irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any
11   related injury during normal use:



12
13
14
15
16
17
18
19
20
21
22
23
24
25

26   _____
     [10] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-G
27   G_1918213323_70847768576_pla419288853760_1784578_353573794076_9021734_c&countrysw
     itch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3
28   WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-
     shampoo-and-conditioner-32-fl-oz/-/A-75560945 (last visited April 2, 2020).

CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

35.     Similarly, nowhere on any of the packaging of Defendant's other Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.

36.     On Defendant's website, Defendant suggests that shedding of hair is "normal": If you have curly hair, chances are you've dealt with hair shedding. **For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal.** But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[11]

37.     Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts." *Id*.

38.     Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more." *Id*.

39.     Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common." *Id*.

40.     Further, Defendant claims that shedding is not preventable. On its website it states:

**Can I prevent shedding?**

In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned. *Id*.

---

[11] https://www.devacurl.com/blog/hair-shedding-101/ (last visited April 2, 2020).

CLASS ACTION COMPLAINT

41.    Defendant further includes a list of recommendations to lessen shedding. Yet, the cessation of using Defendant's Products is not one of the recommendations to reduce shedding:

**How can I lessen the shedding?**

1. Find the right cleanser and conditioner for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.

2. Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to clarify and exfoliate.

3. Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like Wash Day Wonder) before cleansing and finger detangling afterwards can make a world of difference. *Id.*

42.    Above all, far from being the pro-curl products promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

43.    Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

44.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

45.     By marketing, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

46.     By marketing, advertising, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

47.     Defendant engaged in the above-described conduct, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has exclusive access to data pertaining to the Product defects that Plaintiff and Class Members could not and did not have.

48.     Therefore, Plaintiff, on behalf of herself, the Nationwide Class, and the California Subclass, hereby brings this action for violations of various state and federal laws.

**I.     Defendant's Misrepresentations and Omissions Are Material to Consumers**

49.     Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide to women with curly hair—namely, to promote healthier curly hair than other traditional cleansers and conditioners. Consumers purchase the Products based upon Defendant's representations and claims, including that:

- the Products are "free of harsh ingredients;"
- the Products are "made with nourishing, hydrating ingredients;"
- the Products are "free of sulfates, parabens, and silicones to gently cleanse curls;"

- the Products are sourced from "the highest-quality, good-for-you ingredients from around the world;"
- the Products give "your curls what they need and nothing they don't;"
- "All of our products are … always made with nourishing, hydrating Ingredients;" and
- the Products "helps strengthen hair and reduce breakage."

50. Consumers also pay a premium for the Products over comparable hair products on the market.

51. Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use. Further, consumers have also shown that changing from using the Products eliminates shedding.

52. Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

53. Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

54. Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[12]

---

[12] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898 (last visited April 2, 2020).

## II.    Plaintiff's Facts

55.    On April 16, 2019, Plaintiff Wendy Baldyga purchased DevaCurl Low-Poo Delight Cleanser (32 oz.) for $46.00 at the Ulta store located in Morgan Hill, California.

56.    On August 12, 2019, Plaintiff purchased DevaCurl Low-Poo Delight (3 oz.) and DevaCurl One Condition Original (32 oz.) for $10.00 and $46.00, respectively, at the Ulta store located in Morgan Hill, California.

57.    On February 24, 2020, Plaintiff purchased DevaCurl Low-Poo Delight Cleanser (32 oz.) for $46.00 at the Ulta store located in Morgan Hill, California.

58.    On February 26, 2020, Plaintiff purchased DevaCurl One Condition Original (32 oz.) for $46.00 at the Ulta store located in Gilroy, California.

59.    When making her decision to purchase DevaCurl Products, Plaintiff relied on Defendant's representations on the Product labels and packaging – particularly that the Products were intended for use on curly hair.

60.    Plaintiff washed her hair with DevaCurl Low-Poo Delight Cleanser approximately 4 or 5 times per week, and conditioned her hair with DevaCurl One Condition Original approximately 5 or 6 times per week. During each use of the Products, she followed the directions written and provided by Defendant on the Product labels.

61.    Beginning in May or June 2019, Plaintiff began to experience scalp irritation. Specifically, her scalp became very itchy and had noticeable raised bumps.

62.    Shortly after experiencing the scalp irritation, in or around Summer 2019, Plaintiff began suffering from hair loss. Specifically, her hair fell out in small clumps when combing it. Her hair also fell out easily when she touched or played with her curls.

63.    Plaintiff stopped using the Products in or around February 2020.

64.    After Plaintiff stopped using the DevaCurl Products, her scalp irritation and hair loss stopped.

65.    Plaintiff is similarly situated to the Classes she seeks to represent, as she and the putative Class Members purchased Defendant's defective Products, which failed to perform as represented, but instead, caused scalp irritation and hair loss.

66.    Plaintiff and Class Members were, in fact, misled by Defendant's misrepresentations and omissions regarding the Products. But for the misleading and deceptive labeling, packaging, marketing and advertising of the Products. But for Defendant's misleading and deceptive marketing and labeling of the Products, Plaintiff and Class Members would not have purchased the Products, but rather, would have purchased a competitor's products.

**III.    Common Facts**

67.    Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the Internet is littered with stories from other Class Members complaining of the same issues with the Products as Plaintiff has alleged herein.

68.    As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle 'thecurlninja' on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[13]

69.    According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same.

70.    As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than **22,400 members.**

---

[13] https://abc7ny.com/5906690/ (last visited April 2, 2020).

CLASS ACTION COMPLAINT

71.     According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[14]

72.     According to reports, Ms. Mero isn't alone. Another famous Youtuber with more than 200,000 subscribers, posted a video on January 31 where she speaks about her own experience with Defendant's Products. *See* Ayesha Malik, "Why I Stopped Using DevaCurl," https://www.youtube.com/watch?v=nuo8UCcyDhg.

73.     According to reports, the YouTuber tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced dandruff," Malik said. "My scalp was on fire on some days, I didn't know what it was."[15]

74.     Similarly, a thread on Sephora originally posted in 2016 is now flooded with comments from customers complaining about the products and looking for answers.[16]

75.     Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects. Indeed, in January, Defendant issued a public statement acknowledging the alleged defects but refused to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.[17]

---

[14] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited April 2, 2020).

[15] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited April 2, 2020).

[16] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473 (last visited April 2, 2020).

[17] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited April 2, 2020).

8

1

## CLASS ACTION ALLEGATIONS

2    76.    Plaintiff brings this action individually and as a class action pursuant to

3    Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Classes:

4

5    Nationwide Class:

6    All persons residing in the United States who purchased the Devacurl
     Products for personal, family, or household use between April 6, 2016 and
7    the present.

8    California Class:
9    All persons residing in the state of California who purchased the Devacurl
     Products for personal, family, or household use between April 6, 2016 and
10   the present.

11

12    77.    Excluded from the Classes are Defendant, any entity in which Defendant

13   has a controlling interest, any of Defendant's legal representatives, officers, directors,

14   assignees, and successors, as well as the Judge handling the case, and his or her family

15   members and staff.

16    78.    Plaintiff disclaims any intent or right to seek any recovery in this action

17   for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or

18   the Members of the Classes.

19    79.    Numerosity:  The Members of the Classes are so numerous that joinder of

20   all Members is impracticable. While the exact number of Class Members is presently

21   unknown, it consists of thousands of people geographically disbursed throughout the

22   United States. The number of Class Members can be determined by sales information

23   and other records. Moreover, joinder of all potential Class Members is not practicable

24   given their numbers and geographic diversity. The Class is readily identifiable from

25   information and records in the possession of Defendant and its third-party distributors

26   and retailers.

27    80.    Commonality:  Common questions of law and fact exist as to all Class

28   Members.  These questions predominate over questions that may affect only individual

Class Members because Defendant has uniformly acted on grounds generally applicable to the Classes. These common legal or factual questions include, *inter alia*:

    a.  Whether the Products are defective and cause scalp irritation and/or hair loss;

    b.  Whether Defendant knew or reasonably should have known that the Products are defective and do not perform as labeled, marketed, advertised, and represented;

    c.  Whether the Products provide the claims represented by Defendant on the Product labeling, packaging, and in its marketing and advertising;

    d.  Whether Defendant made affirmative misrepresentations regarding the performance of the Products;

    e.  Whether Defendant's conduct was knowing and willful;

    f.  Whether Defendant's conduct violated the California Unfair Competition Law;

    g.  Whether Defendant's conduct violated the California False Advertising Law;

    h.  Whether Defendant breached the express warranties relating to the Products;

    i.  Whether Defendant breached the implied warranties relating to the Products;

    j.  Whether Defendant's acts and omissions make it liable to Plaintiff and Class Members;

    k.  Whether Defendant's conduct was likely to mislead a reasonable consumer;

    l.  Whether Defendant's representations and omissions in connection with the Products were material to a reasonable consumer purchasing the Products;

m. Whether Defendant's conduct, as alleged herein, caused Plaintiff and Class Members to suffer an ascertainable loss of monies, property, and/or value;

n. Whether Defendant was unjustly enriched by receiving money in exchange for the Products;

o. Whether Defendant should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the Products;

p. Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, statutory damages, treble damages, and/or punitive damages, and the amount of such damages;

q. Whether Defendant should be enjoined from marketing, distributing, and selling the Products; and

r. Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices in connection with the marketing, packaging, labeling and/or representations of the Products.

81.    <u>Typicality</u>:  Plaintiff's claims are typical of the other Class Members, as all Members of the Class were and are similarly affected by the same deceptive marketing, packaging, labeling, and misrepresentations in connection with Defendant's Products, which do not perform as represented, but rather, cause injury and damages to Plaintiff and the Class. Defendant's actionable conduct that gave rise to the claims of Plaintiff and Class Members is the same for all Members of the Class.

82.    <u>Adequacy of Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class because she has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

83.    <u>Injunctive/Declaratory Relief</u>:  The elements of Rule 23(b)(2) are met here. Defendant will continue to commit the unlawful practices alleged herein, including Defendant's deceptive marketing, advertising, packaging, labeling, and misrepresenting

the Products, which do not perform as represented, but rather, have caused and will continue to cause injury and damages to Plaintiff, the Class, and the public at-large if Defendant's conduct is allowed to persist. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate with respect to the Class as a whole.

84.    <u>Predominance</u>:  The elements of Rule 23(b)(3) are met here. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impracticable or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

85.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

86.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class)

87.    Plaintiff brings this count on behalf of herself and the Nationwide Class against Defendant and repeats and re-alleges the preceding paragraphs, as if fully set forth herein.

88.     Plaintiff and the Nationwide Class purchased Defendant's Products either directly from Defendant or through authorized third-party retailers and resellers of Defendant's Products.

89.     Defendant, as the manufacturer, distributor, seller, and marketer, expressly warranted that the Products were fit for their intended purposed by making the express warranties that:

        a.  the Products are "free of harsh ingredients"

        b.  the Products are "made with nourishing, hydrating ingredients"

        c.  the Products are "free of sulfates, parabens, and silicones to gently cleanse curls"

        d.  the Products are sourced from "the highest-quality, good-for-you ingredients from around the world"

        e.  the Products give "your curls what they need and nothing they don't"

        f.  "All of our products are … always made with nourishing, hydrating ingredients"

        g.  the Products "helps strengthen hair and reduce breakage"

90.     Defendant also advertises, markets, and represents that its Products, come with a "satisfaction guarantee," which states, in relevant part, that "if for any reason you are not completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers, we will gladly accept returns if you submit your request within 60 days of purchase, with proof of purchase."

91.     Each of these representations and the satisfaction guarantee constitutes an express written warranty.

92.     Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Nationwide Class Members and Defendant.

93.     In fact, Defendant's Products are not fit for such purpose because each of the express warranties is a misrepresentation.

94.     Defendant breached these warranties by placing the Products into the stream of commerce and selling them to consumers, when the Products are defective, cause scalp irritation and hair loss, and do not confer the claimed benefits. This renders the Products unfit for their intended use and purpose and substantially and/or completely impairs the use and value of the Products.

95.     The defects in the Products, as described above, existed when the Products left Defendant's possession or control and were sold to Plaintiff and Nationwide Class Members. The defects were not discoverable by Plaintiff and Nationwide Class Members at the time of their purchase of the Products.

96.     Plaintiff and Nationwide Class Members were injured as a direct and proximate result of Defendant's breach of the foregoing express warranties, because they did not receive the Products as specifically warranted by Defendant, and they would not have purchased the Products or paid a premium for them if they knew the truth about the Products.

<u>**COUNT II**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class)**

97.     Plaintiff brings this count on behalf of herself and the Nationwide Class against Defendant and repeats and re-alleges the preceding paragraphs, as if fully set forth herein.

98.     Under U.C.C. § 2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

99.     U.C.C. § 2-314 has been adopted in California under the Cal. Com. Code § 2314, as well as in 35 other states.

100.     As described above, Plaintiff has standing to pursue this claim because she has suffered injury-in-fact and has lost money or property as a result of Defendant's conduct.

101.    Defendant is a "merchant" within the meaning of U.C.C. § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products, including the Products at issue.

102.    Defendant sold and Plaintiff purchased the Products from authorized third-party retailers and resellers of Defendant's Products.

103.    By placing the Products into the stream of commerce, and by operation of law under Cal. Com. Code § 2314, Defendant impliedly warranted to Plaintiff and Nationwide Class Members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

104.    Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes scalp irritation and significant hair loss, making them unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

105.    The latent and/or inherent defect at issue existed when the Products left Defendant's possession or control and were sold to Plaintiff and Nationwide Class Members. The defect was undiscoverable by Plaintiff and Nationwide Class Members at the time that they purchased the Products.

106.    Defendant has misled consumers into believing the Products were sulfate Free, that they are used to gently cleanse, that they are not made with harsh ingredients, and that hair loss and shedding (even excessive shedding) is common, normal, and unpreventable. Defendant took advantage of the trust and confidence of Plaintiff and the Nationwide Class in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

107.   Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and the Nationwide Class, not third-party retailers, resellers or distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell its Products, which are the same places that Plaintiff and Nationwide Class Members purchased them. In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers.  Individual consumers are the ones who ultimately review the labels, prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchase the Products.

108.   Plaintiff and Nationwide Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiff and the Class also did not receive the value of the Products they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair loss and scalp irritation.

109.   Plaintiff and the Nationwide Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

110.   Accordingly, Plaintiff is entitled to injunctive relief, attorneys' fees, expenses and costs, and any other relief that the Court deems just and equitable.

111.   As a result of the breach of the implied warranty of merchantability, Plaintiff and Nationwide Class Members are entitled to legal and equitable relief, including damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT III
### VIOLATIONS OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the Nationwide Class)

112.   Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all preceding paragraphs, as if fully set forth herein.

113.   The Products at issue are "consumer products," as defined in 15 U.S.C. § 2301(1).

114.   Plaintiff and Class Members are "consumers," as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

115.   Plaintiff purchased Products costing more than five dollars ($5.00) and her individual claims are valued at more than twenty-five dollars ($25.00), as required by 15 U.S.C. §§ 2302(e) & 2310(d)(3)(A).

116.   Defendant is a "supplier" and "warrantor," as defined in 15 U.S.C. §§ 2301(4) & (5).

117.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

118.   Defendant made certain promises and representations to consumers through its express warranty, which became the basis of the bargain between Plaintiff, Class and Subclass Members, on the one hand, and Defendant, on the other hand.

119.   Specifically, Defendant's promises and representation, as alleged, include the following:

- "All of our products are … always made with nourishing, hydrating ingredients"
- "We keep our ingredients simple—everything curls need and nothing they don't."

1    • "100% sulfate paraben silicone free"

2    • "[No-Poo Original] gently cleanses without stripping the natural oils your

3       curls need. Plus, it provides essential moisture so your curls can be shiny,

4       bouncy and just plain gorgeous."

5    • "No-Poo Original is formulated specifically for curly hair with good-for-

6       you ingredients (and without those harsh ingredients) to keep your curls

7       moisturized and healthy-looking. And since the formula is sulfate-free it's

8       non-lathering to offer you a new cleansing experience that's gentler on

9       curls."

10   • "[Low-Poo Original is] great to gently cleanse even fine-textured curls

11      without stripping the natural oils they need to be shiny, bouncy and

12      beautiful."

13   • "Low-Poo Original is formulated specifically for curly hair with good-for-

14      you ingredients (and without those harsh ingredients) to keep your curls

15      moisturized and healthy-looking."

16   • "[No-Poo Decadence] not only provides nourishment, it won't strip your

17      curls' natural oils, and it also helps strengthen hair and reduce breakage

18      when you use it with One Condition Decadence."

19   • "No-Poo Decadence is formulated specifically for super curly hair with

20      good-for-you ingredients (and without those harsh ingredients) to keep

21      your curls moisturized and healthy-looking. And since the formula is

22      sulfate-free it's non-lathering to offer you a new cleansing experience

23      that's gentler on curls."

24   • "[One Condition Original] locks in essential moisture to help control frizz

25      and leave your curls looking healthy and feeling soft."

26   • "[One Condition Delight] provides weightless moisture and fights frizz

27      and tangles so your waves can be defined, bouncy and beautiful."

28

CLASS ACTION COMPLAINT

- "[One Condition Decadence] helps control frizz, and helps strengthen hair and reduce breakage when used with No-Poo Decadence."

120.   Each of the representations listed above constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

121.   Defendant also advertises, markets, and represents that its Products, come with a "satisfaction guarantee," which states, in relevant part, that "if for any reason you are not completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers, we will gladly accept returns if you submit your request within 60 days of purchase, with proof of purchase." This satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

122.   Defendant also provided Plaintiff and the Nationwide Class with an implied warranty of merchantability in connection with their purchases of Defendant's Products that constitutes an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

123.   Specifically, Defendant warranted to Plaintiff and the Class that its Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), will pass without objection in the trade or business, and that the Products are free from material defects, and reasonably fit for the use for which they are intended.

124.   Contrary to Defendant's representations, the Products are defective, cause scalp irritation, shedding, hair breakage, and significant hair loss, and do not confer the claimed benefits. As described above, Defendant breached all applicable warranties and is liable to Plaintiff and the Nationwide Class under 15 U.S.C. § 2310(d)(1). Without limitation, Defendant's Products contain inherent and/or latent defects that cause scalp irritation, shedding, hair breakage, and significant hair loss, thereby making the

19

Products unfit for their intended use and purpose. These defects also substantially impair the use, value and safety of the Products.

125.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit implied warranties for Defendant's Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiff and the Nationwide Class, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew or reasonably should have known that its Products were defective and would continue to pose safety risks and cause injury. Defendant failed to disclose the Product defects to Plaintiff and Class Members.

126.    Plaintiff and Class Members have had sufficient direct dealings with Defendant, through their purchase and use of the Products, to establish privity of contract.

127.    Notwithstanding the establishment of privity of contract, privity is not required here because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties.  Third-party retailers, such as Ulta Beauty, Amazon, and others, were not intended to be the ultimate consumers of Defendant's Products and, therefore, have no rights under the warranties provided with the Products. Rather, the warranty agreements were designed for and intended to benefit purchasing consumers, including Plaintiff and Class Members, as the ultimate end-users of the Products.

128.    All conditions precedent to seeking liability under this claim for breach of express and implied warranties have been performed by or on behalf of Plaintiff and Class Members with respect to the purchase of the Products at issue.

129.   In accord with 15 U.S.C. § 2310(e), Plaintiff and the Nationwide Class are entitled to bring this class action, and are not required to give Defendant notice and/or an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Nationwide Class under Fed. R. Civ. P. 23.

130.   Further, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile, as Defendant had actual or constructive notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Nationwide Class, including, without limitation, multiple complaints to the FDA beginning in February 2018. Defendant has had ample opportunity to cure the defect for Plaintiff and the Nationwide Class, but has failed to do so, instead denying the claims and putting out public statements denying that there are any issues with its Products. Under these circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

131.   While notice is not required, on or around April 6, 2020, Plaintiff sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

132.   Defendant's breaches of warranty have caused Plaintiff and Nationwide Class Members to suffer injuries, as they purchased and paid for defective Products, which they would not have bought but for Defendant's misrepresentations. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

133.   Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Nationwide Class Members are also entitled to recover a sum equal to the aggregate amount of costs

and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Nationwide Class Members in connection with the commencement and prosecution of this action.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class in the Alternative to Counts 1-3)**

134.    Plaintiff brings this count on behalf of herself and the Nationwide Class against Defendant, and repeats and re-alleges the preceding paragraphs as if fully set forth herein.

135.    Plaintiff and Nationwide Class Members conferred a benefit on Defendant when they purchased Defendant's Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the defective Products, Defendant was unjustly enriched at the expense of Plaintiff and Nationwide Class Members.

136.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this complaint.

137.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Nationwide Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described in this complaint in connection with the sale of the Products.

138.    Plaintiff and Nationwide Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known that the Products were defective, caused scalp irritation and significant hair loss, and were not fit for their intended use.

139.   Defendant either knew or should have known that payments rendered by Plaintiff and Nationwide Class Members were given and received with the expectation that they were free of defects and were capable of providing the benefits represented by Defendant in the labeling, marketing, and advertising of the Products. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

140.   Plaintiff and Nationwide Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

141.   When required, Plaintiff and Nationwide Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized third-party retailers and resellers. Purchase through authorized retailer and resellers is sufficient to create such privity because such authorized third parties are Defendant's agents for the purpose of the sale of the Products.

142.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Nationwide Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

<u>**COUNT V**</u>
**NEGLIGENCE – FAILURE TO TEST**
**(On Behalf of the Nationwide Class)**

143.   Plaintiff brings this count on behalf of herself and the Nationwide Class against Defendant, and repeats and re-alleges the preceding paragraphs, as if fully set forth herein.

144.   Defendant failed to perform adequate testing of the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, labeled, marketed, advertised, and/or sold to Plaintiff and the Nationwide Class.

145.   If Defendant had performed adequate testing, it would have shown the serious deficiencies within Defendant's Products, including that use of the Products causes scalp irritation and significant hair loss.

146.   At all relevant times, Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—its Products prior to placing them in the stream of commerce.

147.   Defendant breached its duty by failing to exercise ordinary care in the design and testing of its Products, which it introduced into the stream of commerce, because Defendant knew or reasonably should have known that its Products could cause – and do cause – scalp irritation and substantial hair loss.

148.   Defendant knew or reasonably should have known that Nationwide Class Members, including Plaintiff, would suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of Defendant's failure to exercise ordinary care in the design and manufacturing of its Products by failing to conduct appropriate testing.

149.   As a result of Defendant's above-described conduct, Plaintiff and the Nationwide Class experienced and/or are at risk of experiencing financial damage and injury.

150.   As a direct and proximate result of Defendant's failure to test the Products that it designed, formulated, manufactured, inspected, distributed, marketed, advertised, warranted, and/or sold, Plaintiff and Nationwide Class Members have suffered damages, as described above.

## COUNT VI
### NEGLIGENCE – FAILURE TO WARN
### (On Behalf of the Nationwide Class)

151.   Plaintiff brings this count on behalf of herself and the Nationwide Class against Defendant, and repeats and re-alleges the preceding paragraphs, as if fully set forth herein.

152.   At all relevant times, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling its Products to Plaintiff and the Nationwide Class.

153.   At all relevant times, it was reasonably foreseeable by Defendant that the use of its Products in the intended manner involved a substantial risk of scalp irritation and significant hair loss by Plaintiff and Nationwide Class Members as the ultimate users of the Products.

154.   At all relevant times, Defendant knew or had reason to know of the risk of scalp irritation and substantial hair loss that its Products posed to Plaintiff and Nationwide Class Members, as the defects within the Products existed at the time of their formulation, design, manufacture, inspection, distribution, labeling, marketing, advertising, and/or sale, as described herein.

155.   Defendant, as the developer, manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Products, had a duty to warn Plaintiff and the Nationwide Class of all dangers associated with the intended use of its Products.

156.   At minimum, the duty arose for Defendant to warn consumers that the use of its Products could and, in fact, had caused scalp irritation and significant hair loss after it received numerous complaints of scalp irritation and hair loss, including multiple adverse event reports to the FDA, and after countless online postings regarding hair loss and scalp irritation resulting from the use of Defendant's Products.

157.   Defendant was negligent and breached its duty of care by negligently failing to provide adequate warnings to purchasers and users of the Products, including Plaintiff and the Nationwide Class, regarding the defects, risks, and potential dangers of the Products.

158.   Defendant was negligent and breached its duty of care by negligently blaming other risk factors for consumers' hair loss, going so far as to tell consumers that hair loss and shedding was normal, common, and unpreventable, thereby concealing and failing to warn purchasers and users of the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

159.   Defendant knew, or through the exercise of reasonable care, should have known of the inherent defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiff and Nationwide Class Members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing Plaintiff and the Nationwide Class with adequate warnings.

160.   As a direct and proximate result of Defendant's failure to adequately warn consumers that the use of its Products could cause and has caused injuries, including hair loss and scalp irritation, Plaintiff and the Nationwide Class have suffered damages, as described herein.

**<u>COUNT VII</u>**
**VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of the California Subclass)**

161.   Plaintiff bring this count on behalf of herself and the California Subclass against Defendant, and repeats and re-alleges the preceding paragraphs, as if fully set forth herein.

162.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), is a statutory that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

163.   Defendant is a "person," as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has provided "services," as defined by Cal. Civ. Code §§ 1761(b) & 1770.

164.   Plaintiff and California Subclass Members are "consumers," as defined by Cal. Civ. Code §§ 1761(d) & 1770, and have engaged in a "transaction," as defined by Cal. Civ. Code §§ 1761(e) & 1770.

26

165. Defendant's unlawful conduct resulted in the sales of products and services to Plaintiff and the California Subclass Members in violation of Cal. Civ. Code § 1770, including:

  A. Representing that goods have characteristics that they do not have;

  B. Representing that goods are of a particular standard, quality, or grade when they were not;

  C. Advertising goods with intent not to sell them as advertised; and

  D. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

166. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and California Subclass Members.

167. If Defendant had disclosed to Plaintiff and California Subclass Members that it made material misrepresentations and omissions regarding Defendant's Products, the risks posed by using the Products, and that Defendant was engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling its defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," and sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiff and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

168. As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiff and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing

Defendant's Products, and increased time and expense in treating the damage caused by using Defendant's Products.

169.    On or about April 6, 2020, Plaintiff provided written notice to Defendant via Federal Express of its violations of the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, *et seq*. Plaintiff will seek to amend this claim after Defendant responds to her requests as stated in the CLRA notice letter.

170.    In accordance with Civil Code § 1780(a), Plaintiff and California Subclass Members seek injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive advertising and sales practices.

## COUNT VIII
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On behalf of the California Subclass)

171.    Plaintiff brings this count on behalf of herself and the California Subclass against Defendant, and repeats and re-alleges the preceding paragraphs as if fully set forth herein.

172.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

173.    Plaintiff and California Subclass Members who purchased Defendant's Products suffered a substantial injury by virtue of buying defective Products that misrepresented and/or omitted their true contents and benefits. Had Plaintiff and California Subclass Members known that Defendant materially misrepresented its Products and/or omitted material information regarding its Products and their risk of causing scalp irritation and hair loss, they would not have purchased the Products.

174.    Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in the preceding paragraphs of this complaint.

175.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Products.

176.    Plaintiff and California Subclass Members who purchased Defendant's Products had no way of reasonably knowing that the Products were deceptively marketed, advertised, and labeled, were defective and likely to cause scalp irritation and significant hair loss. Thus, California Subclass Members could not have reasonably avoided the harm they suffered.

177.    The gravity of the harm suffered by Plaintiff and California Subclass Members who purchased Defendant's Products outweighs any legitimate justification, motive or reason for marketing, advertising, and labeling the defective Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiff and California Subclass Members.

178.    The above acts of Defendant, in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff and California Subclass Members, were and are likely to deceive reasonable consumers by obfuscating the true defective nature of Defendant's Products, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

179.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.  Mislabeled cosmetic products cannot legally be manufactured, held, advertised, distributed, or sold. Thus, mislabeled cosmetics have no economic value and are worthless as a matter of law, and purchasers of mislabeled cosmetics are entitled to a restitution refund of the purchase price of the mislabeled cosmetic.

1

2

3    **COUNT IX**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of the California Subclass)**

5    180.    Plaintiff brings this claim, on behalf of herself and the California Subclass

6    against Defendant, and repeats and re-alleges the preceding paragraphs as if fully set

7    forth herein.

8    181.    Plaintiff and California Subclass Members have standing to pursue a cause

9    of action for false advertising under Bus. & Prof. Code §§ 17500, *et. seq.* because they

10   have suffered an injury-in-fact and lost money as a result of Defendants' actions as set

11   forth herein.

12   182.    Specifically, Defendant engaged in the following deceptive and

13   misleading conduct in violation of the California False Advertising Law:

14           a.  Defendant manufactured, labeled, packaged, marketed, advertised,
             distributed, and/or sold the Products when Defendant knew, or should have

15           known, that the Products were defective and can cause and did cause injury
             to consumers, including scalp irritation and significant hair loss;

16           b. Defendant knew the defects in its Products were unknown to and would

17           not be easily discovered by Plaintiff and California Subclass Members, and
             would defeat their ordinary, foreseeable and reasonable expectations

18           concerning the performance of the Products; and

19           c.  Plaintiff and California Subclass Members were deceived by
             Defendant's failure to disclose and could not discover the defects within

20           the Products prior to purchasing the Products.

21   183.    Defendant's foregoing deceptive acts and practices, including its

22   omissions, were likely to deceive, and did deceive, consumers acting reasonably under

23   the circumstances. Consumers, including Plaintiff and California Subclass Members,

24   would not have purchased Defendant's Products had they known about the defects in

25   the Products or the fact that the Products can and have caused injury, including scalp

26   irritation and significant hair loss.

27   184.    Defendant's actions violate Cal. Bus. & Prof. Code §§ 17500, *et seq.*

28

185.   As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and California Subclass Members who paid for the defective Products. Therefore, Defendant has been unjustly enriched.

186.   Plaintiff and California Subclass Members seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535. 309. Plaintiff and California Subclass Members seek injunctive relief to prohibit Defendant from continuing to sell the defective Products, and to prevent Defendant from engaging in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and California Subclass Members will suffer irreparable harm and/or injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seeks a judgment against Defendant, as follows:

    a.    For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

    b.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

    c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

    d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e.    For prejudgment interest on all amounts awarded;

    f.    For an order of restitution and all other forms of equitable monetary relief;

    g.    For injunctive relief as pled or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  April 6, 2020.

Respectfully submitted,

**GREG COLEMAN LAW PC**

/s/ Alex R. Straus
Alex R. Straus (SBN 321366)
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

Rachel Soffin*
Jonathan B. Cohen*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T:  865-247-0080
F:  865-522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

**WHITFIELD BRYSON LLP**

Daniel K. Bryson*
Martha Geer*
Harper Todd Segui*
900 W. Morgan Street
Raleigh, NC 27603
T:  919-600-5000
F:  919-600-5035

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

dan@whitfieldbryson.com
martha@whitfieldbryson.com
harper@whitfieldbryson.com

*Applications *pro hac vice* to be submitted

*Attorneys for Plaintiff and the Class*